# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| JEFFREY MANNOIA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 05 C 3274 |
| | ) | |
| DETECTIVE DAVID GREGORY FARROW, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Defendant David Gregory Farrow's ("Farrow") motion for summary judgment and motion to strike. For the reasons stated below, we grant the motion to strike and the motion for summary judgment.

## BACKGROUND

Plaintiff Jeffrey Mannoia ("Mannoia") alleges that he became estranged from his wife, Christine Mannoia ("Christine") and that thereafter the couple's children were in Mannoia's physical custody at times and in his wife's physical custody at times. Mannoia alleges that in April 2004, the Kenosha County Child Welfare Services caused his children to be removed from his wife's custody when they were

1

found walking to a friend's house at night and their mother's whereabouts were unknown. According to Mannoia, after the County's involvement in the matter, the children were placed in Mannoia's custody in Maui, Hawaii. Mannoia claims that he subsequently returned to Illinois and enrolled the children in school in Gurnee, Illinois. Mannoia further alleges that in February 2005, his wife took the children for a weekend visit and refused to return them. Mannoia claims that, at that time, his wife also obtained a Wisconsin state court order requiring Mannoia to provide support to his wife. Mannoia claims that no custody proceedings were brought at that juncture and that there was no order adjudicating the custody of the children.

Mannoia alleges that the children remained with his wife and that on February 26, 2005, his wife brought the children to Mannoia for a pre-arranged visit. Mannoia claims that he was concerned for the children's safety while they were being cared for by his wife, and Mannoia, after consulting with an attorney, returned to Hawaii with the children. His wife thereafter filed a complaint with the Village of Gurnee Department of Police ("Police Department"). Mannoia contends that Farrow, who is a detective for the Police Department, spoke by telephone with a woman named Donna ("Donna") of the Kenosha County Circuit Clerk's Office Family Division ("Family Division"). According to Mannoia, Farrow learned that although a child support order had been issued against Mannoia, he was still married to his wife and the order did not address child custody issues. Farrow then allegedly appeared before an Illinois state court and told the judge that there was a valid

Wisconsin state court order granting physical custody of the children to Mannoia's wife. Mannoia specifically alleges in his complaint that Farrow intentionally lied to the state court judge, knowing that no such order existed and that Farrow withheld the substance of Farrow's conversation with the Family Division.

A warrant for Mannoia's arrest was issued by the Circuit Court of Lake County, Illinois, based on the court's conclusion that Mannoia had "intentionally violated the terms of a valid court order granting custody to Christine Mannoia by removing the child 'A' (and 'B') from the jurisdiction of the court." (Order 1). Mannoia was then allegedly arrested at his Hawaii residence in front of his children. Mannoia also claims that the children were not allowed to remain at their grandparents' home in Hawaii and were placed in foster care in Hawaii at his wife's insistence. According to Mannoia, the charges against him were eventually *nolle prossed* and the case was dismissed. Mannoia has brought the instant action solely against Farrow, and his complaint includes a claim alleging that his constitutional rights were violated, seeking relief pursuant to 42 U.S.C. § 1983 ("Section 1983"). Mannoia also has brought common law false arrest and malicious prosecution claims against Farrow. On October 13, 2005, we denied Farrow's motion to dismiss, finding that we were unable to decide the issue of Farrow's qualified immunity at that point. On December 1, 2005, Farrow filed the instant motion for summary judgment.

## LEGAL STANDARD

Summary judgment is appropriate when the record, viewed in the light most favorable to the non-moving party, reveals that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In seeking a grant of summary judgment, the moving party must identify "those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (quoting Fed. R. Civ. P. 56(c)). This initial burden may be satisfied by presenting specific evidence on a particular issue or by pointing out "an absence of evidence to support the non-moving party's case." *Id.* at 325. Once the movant has met this burden, the non-moving party cannot simply rest on the allegations in the pleadings, but, "by affidavits or as otherwise provided for in [Rule 56], must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). A "genuine issue" in the context of a motion for summary judgment is not simply a "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, a genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Insolia v. Philip Morris, Inc.*, 216 F.3d 596, 599 (7th Cir. 2000). The court must consider the record as a whole, in a light most favorable

to the non-moving party, and draw all reasonable inferences that favor the non-moving party. *Anderson*, 477 U.S. at 255; *Bay v. Cassens Transport Co.*, 212 F.3d 969, 972 (7th Cir. 2000).

## DISCUSSION

### I. Motion to Strike

Farrow has filed a motion to strike portions of Mannoia's Local Rule 56.1 statement of additional facts and Mannoia's response to the instant motion for summary judgment. According to Farrow, Mannoia's statement of facts and response included an affidavit and testimony from expert witness Dennis Waller. However, according to Farrow, Farrow did not receive notice of the expert testimony until after the close of discovery and after Farrow had filed the instant motion for summary judgment. Mannoia argues that he was not required to disclose potential expert witnesses in a Federal Rule of Civil Procedure 26(a)(1) ("Rule 26(a)(1)") disclosure, and that "Plaintiff had no need for an expert until the defendant filed his Motion for Summary Judgment." (Resp. 2). Regardless of whether disclosure of expert witnesses is required under Rule 26(a)(1), the Federal Rules of Civil Procedure clearly contemplate that parties must disclose expert testimony to the other parties. *See* Fed. R. Civ. P. 26(a)(2). Not revealing such testimony to one's opponent until after dispositive motions are filed creates an unfair advantage for the non-moving party, given that the moving party is faced with this surprise testimony

5

and it cannot conduct discovery on the testimony. Accordingly, we grant Farrow's motion to strike.

II. Probable Cause

Farrow argues that summary judgment is proper in the instant action because "Plaintiff has not set forth any evidence to create an issue of material fact as to the existence of probable cause for his arrest." (Mot. 3). The Seventh Circuit has stated that when there is a facially valid arrest warrant, as in the instant action, the question of whether probable cause existed to support the grant of an arrest warrant comes down to a determination of whether the law enforcement officer "knowingly or intentionally or with a reckless disregard for the truth, made false statements to the judicial officer [who granted the warrant], and [whether] the false statements were necessary to the judicial officers' determinations that probable cause existed for the arrests." *Beauchamp v. City of Noblesville, Ind.*, 320 F.3d 733, 742-43 (7th Cir. 2003). In other words, "an officer is not immune from suit for procuring a warrant 'if a reasonably well-trained officer in the position of the defendant would have known that the action lacks probable cause and that he should not have applied for the warrant.'" *Neiman v. Keane*, 232 F.3d 577, 579-80 (7th Cir. 2000) (quoting *Simmons v. Pryor*, 26 F.3d 650, 653 (7th Cir. 1993)). This is the case when an officer fails to inform the judge about material evidence that the officer knows would negate a finding of probable cause. *Id.* Furthermore, the Seventh Circuit has made it clear that "the existence of probable cause for an arrest totally precludes any

section 1983 claim for unlawful arrest, false imprisonment, or malicious prosecution." *Mark v. Furay*, 769 F.2d 1266, 1269 (7th Cir. 1985); *see also Terket v. Lund*, 623 F.2d 29, 31 (7th Cir. 1980)(stating that a finding of probable cause precludes causes of action for malicious prosecution and false imprisonment under Illinois law).

In the instant action, Mannioa argues that "Farrow is not entitled to qualified immunity as a matter of law because he procured an arrest warrant by presenting intentionally false sworn testimony and by intentionally withholding material facts from the prosecutors and the state court judge who issued the warrant." (Resp. 1). Specifically, Mannoia argues that Farrow was never told directly by Christine that there was an order of custody giving her custody of the children and that he never asked her about such an order, which Mannoia argues "establishes Farrow's reckless indifference to the truth." (Resp. 7). Mannoia also contends that Farrow should not have relied on any representations made by Donna of the Family Division and that whether there was a custody order is an "objective fact" that Farrow should have been able to determine. (Resp. 7-8). Finally, Mannoia argues that Farrow was "objectively unreasonable" in relying on the advice of reviewing Assistant State's Attorneys and that Farrow "lied to the court." (Resp. 10).

According to the undisputed facts, Christine went to the Police Department after Mannoia failed to return the children to her, and this occurred because Mannoia had taken the children to Hawaii without telling Christine, the mother of the children. ( R SF 8, 17-21). Mannoia admits pursuant to Local Rule 56.1 that

7

Christine told Farrow she was still married to Mannoia and that she produced a Wisconsin state court document, which clearly stated that Christine was the custodial parent for the children, that Mannoia was the non-custodial parent, and that as the non-custodial parent Mannoia was required by the court to pay Christine child support. ( R SF 10-12). During his investigation, Farrow discovered facts that would lead a reasonable person to believe that Mannoia had been planning to secretly take his children away without telling Christine. For example, Farrow found out that Mannoia informed his employer that he intended to go to Hawaii before he left. ( R SF 18). Pursuant to Local Rule 56.1, Mannoia admits this fact. ( R SF 18). In addition, Farrow took reasonable steps to investigate the Wisconsin court order. For example, Farrow called the Family Division to inquire about the order. ( R SF 24). Donna of the Family Division told him that the Mannoias were still married, that the order only concerned child support, and that she was unable to explain "the significance of the custodial/non-custodial designation" on the order "other than what was said on the papers." ( R SF 27-29).

It is also undisputed that Farrow took this information to the Lake County State's Attorney's Office, which must give approval before a police officer may seek an arrest warrant. ( R SF 33, 34). Farrow first spoke to Assistant State's Attorney Geoffrey Howard ("Howard") of the Felony Review Unit. Pursuant to Local Rule 56.1, Mannoia has not disputed that Farrow shared all of the evidence he had obtained with Howard, including that the Wisconsin court order dealt only with child support. ( R SF 36). Farrow contends that based on the evidence presented, Howard

8

determined that there was probable cause to arrest Mannoia for child abduction, and that the Wisconsin court order showed that Christine had custody of the children. ( R SF 38-40). Mannoia attempts to dispute this by saying that Howard's determination was "made, in part, as a result of defendant Farrow's intentional withholding of material facts." ( R SF 40). However, Mannoia cites nothing to support this claim and has not shown that Farrow withheld any facts at all from Howard. ( R SF 40). At this point in the litigation, Mannoia cannot just rely on general denials. *See Leibforth v. Belvidere Nat. Bank,* 337 F.3d 931, 934 (7th Cir. 2003) (stating that "[g]eneralized denials do not suffice under" Local Rule 56.1). Pursuant to local rule 56.1, Mannoia admits that the determination by Howard that there was probable cause to arrest Mannoia was seconded by Howard's supervisor, Assistant State's Attorney John Matthew Chancey ("Chancey"). ( R SF 46, 53-54). Mannoia also admits that Chancey then made the ultimate charging decision and Howard and his secretary prepared the warrant, which Farrow presented to the judge. ( R SF 54-56).

Mannoia tries to cast serious dispersions on Farrow by claiming that Farrow "lied to the court" when he was seeking approval of the warrant. (Resp. 10). In her deposition, Judge Martin of the Circuit Court of Lake County, the judge who approved the arrest warrant for Mannoia, stated that Farrow either told her or confirmed that there was a valid court order granting custody to Christine. (Mart. Dep. Pg. 6-7). Farrow admits this in his statement of facts. (SF 59). Mannoia contends that Farrow either "unconstitutionally withheld material facts from the

Court" or, if he realized that the Wisconsin court order only dealt with child support "he was obliged to conduct a further examination." (Resp. 9-10). However, based on the evidence presented to the court, no reasonable trier of fact could find that the above contentions by Mannoia are the only two conclusions one could reach. First, the plain reading of the Wisconsin court order was that Christine was the custodial parent and Mannoia was the non-custodial parent. Mannoia admits that Farrow tried to confirm this with the Wisconsin Family Division, and was told nothing to the contrary. Mannoia also admits that Farrow's reading of the Wisconsin court order was confirmed by two Assistant State's Attorneys, who approved an application for a warrant to be presented to the Circuit Court that said "defendant intentionally violated the terms of a valid court order granting custody to Christine Mannoia." (D's Ex. I 1). This statement was not inaccurate because Christine did have custody of the children. No reasonable trier of fact could find that it was reckless for Farrow to tell Judge Martin that there was a custody order in favor of Christine, if in fact Farrow made such a statement in court, or that Farrow intentionally misled the court. Rather, given the totality of the evidence presented, a reasonable trier of fact would find that Farrow's statement to Judge Martin, if such a statement was made, was reasonable. Second, Farrow was not constitutionally required to do more investigating to determine whether the Wisconsin Court order, which stated that Christine was the custodial parent and Mannoia was the non-custodial parent, was correct. The probable cause standard only asks whether there is "a probability or substantial chance of criminal activity, not a certainty that a crime was committed."

*Beauchamp*, 320 F.3d at 743. An officer is not required to disprove every possibility before seeking an arrest warrant. *Id.*

The totality of the undisputed facts in this case clearly show that a reasonable officer would have determined that there was probable cause to arrest Mannoia. Child abduction and the unauthorized taking of children is an extremely serious matter, and Farrow, Howard and Chancey acted reasonably and conscientiously in this situation. Protecting our children is one of the most important responsibilities of a community. All too often, children disappear at the hands of either strangers or relatives, ruining the children's lives and those of their loved ones they left behind. No one disputes that Mannoia took his children very far away without telling their mother, who we now know had legal joint custody of them. Farrow took this situation seriously and moved quickly, doing his best to balance his knowledge of the situation with the rights and needs of the children, Mannoia, and his wife. Farrow made a good faith effort to do the right thing in this case. Therefore, Mannoia is precluded from recovering for a fourth amendment violation under Section 1983 or for the common law torts of false arrest and malicious prosecution. Accordingly, we grant Farrow's motion for summary judgment in its entirety.

## CONCLUSION

For the reasons stated above, we grant Defendant Farrow's motion for summary judgment in its entirety and grant Farrow's motion to strike.

_____
Samuel Der-Yeghiayan
United States District Court Judge

Dated:   January 12, 2006

12